UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TEAMSTERS LOCAL UNION NO. 177,** | Civ. No. 19-726 (KM) (MAH) |
| Petitioner, | |
| v. | **OPINION** |
| **UNITED PARCEL SERVICES,** | |
| Respondent. | |

### KEVIN MCNULTY, U.S.D.J.:

Before the Court is the motion (DE 2) of Teamsters Local Union No. 177 (the "Union") for an order confirming the Arbitration Award dated January 21, 2018, pursuant to the Federal Arbitration Act 9 U.S.C.§§ 1-14 ("FAA") and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"). Also before the Court is the motion (DE 11) of United Parcel Services ("UPS") to dismiss the Union's petition pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

UPS states that there is no justiciable controversy; it is abiding by the arbitrator's ruling and intends to go on doing so. The Union replies that caution requires it to confirm the award within the one-year deadline to do so, lest UPS change its mind and violate the award later. Here as elsewhere, labor law provides a highly specialized context and a unique set of policy concerns, discussed herein. I have followed what appears to be the most applicable appellate authority, and, for the reasons set forth below, I will deny the Union's motion and grant UPS's motion to dismiss. I do so, however, with the understanding that the Union here enjoys the benefit of a six-year statute of limitations under Section 301.

1

## I. Summary

### a. Facts

The Union and UPS are parties to a Collective Bargaining Agreement, comprised of two separate agreements: the National Master Agreement between UPS and the International Brotherhood of Teamsters ("Teamsters"), and a Supplemental Agreeement between UPS and Local I77, *i.e.*, the Union. (Declaration of Steven Radigan, DE 11-2; Declaration of Edward H. O'Hare, DE 1-1). The arbitration award in this matter is dated January 21, 2018. (*Id.*). In the arbitration award, the arbitrator, Melissa H. Biren, determined that "[t]he grievance is sustained. UPS shall cease and desist assigning package car drivers to work in buildings outside the area designated in Article 46, Section 3 of the parties' [Collective Bargaining] Agreement." (*Id.*; *see also* Opinion and Award, Exhibit B, DE 1 pp. 36–43)

UPS asserts that it accepts the award and in no way seeks to vacate or challenge it. (Declaration of Steven Radigan, DE 11-2). UPS's actions in this matter do not contradict that contention.

The Union refers to several grievances filed since the CBA was entered. (Declaration of Christopher Eltzholtz, DE 13-1). However, those grievances were considered by the arbitrator, Melissa H. Biren, and were resolved in the Union's favor. (*Id.* ¶¶ 4–5). Later, the Union accused UPS of violating the arbitrator's award. (*Id.* ¶¶ 7–8). The Union and UPS then settled those claims with a monetary settlement. (*Id.*).

The Union does not claim that UPS is in violation of the arbitrator's ruling at this time. Rather, the Union seeks confirmation of the arbitration award so that, in the future, the Union will "not be required to continually monitor, grieve and/or re-litigate a settled dispute." (Declaration of Christopher Eltzholtz, DE 13-1 ¶ 8).

UPS asserts that its Labor Relations Manager, Steven Radigan, "contacted Union Secretary-Treasurer Chris Eltzholtz to ask why the Union filed the instant Petition. Eltzholtz stated that the Union is attempting to

2

position itself to penalize UPS in the event the Union perceives violations of the Award in the future. He also stated that the Union may try this tactic with other awards, and that he 'has to protect this Local from the Company.'" . (Declaration of Steven Radigan, DE 11-2). In his own affidavit, Christopher Eltzholtz asserts that "Local 177 is not attempting to 'position itself to penalize UPS.' Instead, given the aforesaid history, Local 177 has no confidence UPS will abide by the award. As I understand it, an arbitration award must be confirmed in as little as one year from its issuance." (Declaration of Christopher Eltzholtz, DE 13-1).

### b. Procedural History

On January 18, 2019, the Union filed a petition to confirm an arbitration award. (DE 1). On that same day, the Union moved to confirm the arbitration award. (DE 2). It asserted that "[a] brief is unnecessary in light of the simple facts of this case and the clear authority of this Court to confirm arbitration awards." (DE 1 ¶ 5).

On February 19, 2019, UPS filed an opposition to the verified petition and a cross-motion to dismiss the verified petition with prejudice. (DE 11).

On March 1, 2019, the Union filed a reply brief in support of its motion to confirm the arbitration award. (DE 13).

On March 5, 2019, I granted UPS permission to file a short surreply (DE 15), and on March 7, 2019, it did so. (DE 16)

## II. Discussion

### a. Legal standards

#### i. Fed. R. Civ. P. 12(b)(1)

The burden of establishing federal jurisdiction rests with the party asserting its existence. [citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3, 126 S. Ct. 1854, 164 L.Ed.2d 589 (2006).] "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." [citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).] A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport

3

> [factually] with the jurisdictional prerequisites.'" [citing *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (alterations in original) (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir.2007)).]
>
> "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." [citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).] By contrast, in reviewing a factual attack, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." [citing *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) (citations omitted).]

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (footnotes omitted; case citations in footnotes inserted in text).

### ii. Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*,

4

712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### b. Analysis

Here, I am presented to with a motion to confirm an arbitration award which UPS, the losing party, says it does not dispute. Even so, the Union argues, it is not required to accept the employer's assurances; the court must confirm the arbitration award pursuant to the FAA. The Union asserts that the Court is mandated to confirm arbitration awards because 9 U.S.C. § 9 states that a court "must grant [a confirmation] order" unless the arbitration award is modified, vacated, or corrected. (DE 13, p. 9). Further, the Union asserts that it is under a one-year deadline to confirm the award, and therefore must act now. (DE 13; DE 13-1). If it does not do so, it fears that UPS will violate the terms of the award after the one-year deadline to render it judicially enforceable has passed.

The following excerpts of the FAA and Section 301 are pertinent to this motion. In part, Section 9 of the FAA states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, **then at any time within one year** after the award is made any party to the arbitration **may apply** to the court so specified for an order confirming the award, and thereupon the court **must** grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C.A. § 9 (emphasis added). Section 301 of the Labor Management Relations Act is the statute governing suits by and against labor organizations. 9 U.S.C. § 185. Section 301 "grants this Court jurisdiction to confirm or vacate arbitration awards between a labor union and an employer." *Indep. Lab.*

*Employees' Union, Inc. v. ExxonMobil Research & Eng'g Co.*, Civ. No. 18-10835, 2019 WL 3416897, at *4 (D.N.J. July 29, 2019) (citing *Tube City IMS, LLC v. USW Int'l Union, Local 5852-19*, 406 F. App'x 639, 639 (3d Cir. 2011)). Section 301, unlike the FAA, does not contain any explicit statute of limitations. 9 U.S.C. § 185.

UPS moves to dismiss plaintiff's motion for lack of a case or controversy. Article III, Section 2 of the United States Constitution sets forth boundaries on the judicial power of the Courts of the United States:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;–to all Cases affecting Ambassadors, other public Ministers and Consuls;–to all Cases of admiralty and maritime Jurisdiction;–to Controversies to which the United States shall be a Party; –to Controversies between two or more States; –between a State and Citizens of another State; – between Citizens of different States;– between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. CONST. art. III, § 2. "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (citations omitted). In addition, "[u]nder the ripeness doctrine, federal courts 'will not decide a case where the claim involves contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). This doctrine derives "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Id.* at 880.

There is a Circuit split as to whether a court may confirm an award in a labor arbitration absent an active dispute. The First Circuit holds that such confirmation is not proper. *Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484, 492–

93 (1st Cir. 1983). Some district courts, including one within the Third Circuit, have followed suit. *See e.g., U. Chicago Med. Ctr. v. Nat'l Nurses United*, Civ. No. 17-2005, 2018 WL 461231, at *4 (N.D. Ill. Jan. 1, 2018) ("Article III concerns sometimes arise when a party seeks judicial confirmation of [a labor] arbitration award . . . in the absence of a specific dispute . . . . Most courts that have considered these claims have found them to be either moot or unripe for adjudication."); *1199 Seiu United Healthcare Workers E. v. Civista Med. Ctr., Inc.*, Civ. No. 10-0479, 2011 WL 310486, at *1 (D. Md. Jan. 28, 2011) (holding that the court had no basis to confirm an arbitration award when there was no live controversy); *Steris Corp. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., Local No. 832*, 489 F. Supp. 2d 501, 514 (W.D. Pa. 2007) (applying *Derwin* to dismiss a motion to confirm an arbitration award for lack of an actual case or controversy).

Courts within the Second Circuit, however, have held that a court must confirm an arbitration award if the statutory requirements are met, even when there is no currently active dispute. *Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*, Civ. No. 08-3658, 2009 WL 855946, at *2 (S.D.N.Y. Mar. 26, 2009) (subsequent history omitted). *Cf. Zeiler v. Deitsch*, 500 F. 3d 157 (2d Cir 2007) ( "Confirmation under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards] is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm . . . At the confirmation stage, the court is not required to consider the subsequent question of compliance.").

The Third Circuit and the District of New Jersey have yet to address this issue directly. I therefore examine the rationales of the cases.

In *Derwin,* the First Circuit considered a motion to confirm an arbitration award under Section 301 and the FAA when neither party challenged the award or presented any dispute over its scope or enforcement. 719 F.2d at 491.

7

In order to confirm, the court explained, it would have to bifurcate the case into a confirmation proceeding and (should the occasion arise) an enforcement proceeding. *Id.* The court found that doing so would be "cumbersome, unnecessary, and potentially misleading." *Id.* Under the circumstances, confirmation would "merely give the parties something more to argue about," *id.* at 492, "would risk injecting the courts improperly into the arbitration process . . . and . . . may merely serve to skew the bargaining balance between the parties." *Id.* The court hung its hat on "the prudential values of Article III, which militate against ministerial confirmation of awards in the absence of a concrete dispute" and the fact that "the reliance on arbitration to settle labor disputes is a central policy of federal labor law." *Id.* The court considered that, if there were a strict statute of limitations for actions to confirm, it would be reasonable to argue, even absent an active dispute, that a party "should be entitled to obtain judicial confirmation in order to protect its rights under the award from lapse due to the passage of time." *Id.* However, earlier in the opinion, the court had rejected the application of the one-year limitations period under the FAA "in part to avoid this sort of wasteful litigation." *Id.*[1]

I briefly explain the Derwin court's reasoning on the statute of limitations issue, which will lend itself to my analysis in this case. The court began "with recognition that, ordinarily, 'the timeliness of a section 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations.'" *Id.* at 487 (citing *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05 (1966). Of, the *Derwin* court noted, that rule is not to be applied mechanically. *Id.* (citing *DelCostello v. International*

---

[1] Considering the relationship between the statute of limitations and the case and controversy requirement, the court also raised some practical concerns:

> The more economical approach is to allow a substantial, or even unlimited, time period for filing actions to confirm (and enforce) awards, and to require that these suits, like others in the federal courts, allege a concrete violation or other dispute entitling the plaintiff to some relief.

*Derwin*, 719 F.2d at 492.

8

*Brotherhood of Teamsters*, 462 U.S. 151 (1983).[2] However, in pure 301 cases, there is a "presumption of state law primacy in resolving 301 limitation questions." *Id.* The court cited the Supreme Court's ruling in *Gen. Elec. Co. v. Local 205, United Elec., Radio & Mach. Workers of Am. (U.E.)*, 353 U.S. 547, 77 S. Ct. 921 (1957), which provided that Section 301 provides its own body of federal substantive law. The FAA, the court held, "may be consulted in the formulation of federal substantive law, but it is not binding in cases arising under section 301." *id.* at 488. Thus the court rejected "the contention that we are legally bound to apply the limitations period of the federal arbitration act to the [union]'s suit to confirm." *Id.*

Because Section 301 contains no limitations period, the court looked to Massachusetts state law. It found no specific state statute of limitations for a suit to confirm an arbitration award. *Id.* The court considered that one of the following limitations period was possibly applicable: the state's six-year statute of limitations period for contract actions, the state's twenty-year statute of limitations for enforcement of judgments, or maybe even no time limit at all. *Id.* at 489–490. The court determined that borrowing any of those three statutes would be more appropriate than borrowing the one-year provision from the FAA. *Id.* at 490.

Over twenty years later, the U.S. District Court for the Southern District of New York distinguished *Derwin* when considering whether to enforce a labor arbitration award under Section 301. *Nat'l Football League Players Ass'n*, 2009 WL 855946 at *3. There, the respondent argued that a party bringing an action for confirmation must demonstrate an actual breach of the agreement. *Id.* at *2. In New York, the borrowed state statute of limitations period for a Section 301 motion to confirm arbitration is one year. *Id.* at *3 n. 3. *Id.* (citing *New*

---

2    In *DelCostello*, the Supreme Court held that in "hybrid" section 301 actions, meaning actions in which a union member sues his or her employer for breach of a CBA and sues his or her union for breach of the duty of representation, a six months limitation applied under the National Labor Relations Act 29 U.S.C. § 160(b). *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983).

9

York's Health & Human Serv, Employees Union, 1199/SEIU, AFL–CIO v. Grossman, Civ No. 02-6031, 2007 WL 2907386, at *6 (E.D.N.Y. Oct. 3, 2007))). In the NFL action, however, the award imposed ongoing duties that could be violated years after it was entered.[3] Thus, to prevent any lapse in its ability to judicially enforce the award, the petitioner needed to obtain judicial confirmation within that relatively short limitations period. *Id.* at *3.

Later, the U.S. District Court for the Northern District of Illinois considered both *Derwin* and *Nat'l Football League* in connection with confirmation of an arbitration award as to which there was no current dispute. *Chicago Reg'l Council of Carpenters*, No. 11 C 8365, 2012 WL 6189635 at *3–*5 (N.D. Ill. Dec. 12, 2012). Essentially, it followed the reasoning of *Derwin*. *Id.* at *4–*5. The court noted that "[c]ourts that have confirmed arbitration awards when there is no live controversy generally do so out of a concern that the plaintiff could be prejudiced if the statute of limitations for confirming the award expires before a controversy under the award arises." *Id.* at *5 n. 7. The *Chicago Reg'l* court, however, found that a five year statute of limitations applied. As a result, the court found, the risk of an employer waiting out the limitations period before violating the award was "negligible." *Id.* ("This period is more than sufficient to cover any dispute arising under the current CBA, as it expires in 2012.")[4]

Two potentially determinative factors emerge from this case law: (1) whether there is an ongoing dispute over the terms or enforcement of the award; and (2) whether there is a realistic probability that the employer could

---

[3]      In *Nat'l Football League Players Ass'n*, the players prevailed in arbitration on their grievance that teams had claimed offsets for the entire amount of workers compensation benefits paid to injured players when, under the CBA and the NFL players contract, teams are only entitled to a limited offset. *Id.* at *1. The award, which was entered in February 2007, was not unsealed and delivered to the parties until June of that year, and the parties had agreed that the arbitration decision could not even begin to be used as precedent in future disputes until the CBA reached its "Final League Year" in 2010. *Id.*

[4]      *Chicago Reg'l* also suggested that *res judicata* might further bolster the union's position. *Id. See* discussion at p. 14, *infra*.

wait out the limitations period and violate the arbitration award when it is too late for the union to obtain judicial relief.

As to the ongoing dispute factor, UPS says it now fully accepts the arbitration award. On the other hand, it apparently has violated the award more than once since it was entered (and then retreated). A union may perhaps be rightly suspicious of an employer which professes full support for an award while fighting any attempt to render it judicially enforceable. There is of course a policy preference that arbitration represent the final resolution of the parties' differences. But especially where, as here, the arbitrator's award has subsequently been violated, the court need not let policy-based wishful thinking substitute for the judicial backing to which a party prevailing in arbitration is entitled by statute. So this factor, standing alone, might not convince me that this Court lacks jurisdiction.[5]

Not so, however, the statute of limitations factor. This arbitration award has a potential ongoing effect. The CBA itself nominally expired in 2018, but contains an evergreen provision extending its life:

> This agreement shall remain in full force and effect until July 31, 2018 and shall automatically renew itself from year to year thereafter unless either party notifies the other in writing within sixty (60) days prior to the expiration of a desire to amend or terminate the same.

(CBA art. 74, DE 1 p. 33). Based on the findings in the arbitration award, it seems that the parties have been renewing and changing this agreement since

---

[5] A pattern of past violations suggesting a threat of future violations, too, might suffice to create federal jurisdiction. It is common for a plaintiff to seek an injunction on that basis. *See generally United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1182 (3d Cir. 1976) (noting, in the FDA context, that irreparable injury for a preliminary injunction may be demonstrated by a full evidentiary hearing disclosed a history of "repetitive, flagrant violations, suggesting a real danger of recurrent evasions"). If the parties litigated the merits of that injunction case, could the losing party then stave off entry of judgment and obtain dismissal of the case by promising to comply? Most likely not. Here, the only difference is that the parties, who surely were adverse, fought out their differences in arbitration before the prevailing party sought entry of judgment here. The parties do not raise this quasi-injunctive reasoning as a basis for jurisdiction, however, and I reserve it for some future case.

1982 (DE 1, p. 37). The issue decided by the arbitrator was one of interpretation of the CBA regarding work assignments;[6] by its nature it would have ongoing effect and could give rise to a future violation or grievance.

If the one-year statute of limitations contained in the FAA applied, then there would surely be a realistic possibility that UPS could violate the order after it was too late for the Union to seek judicial confirmation. But if, on the other hand, an action for confirmation under Section 301 has a longer time limit, then the danger might be slim.

The cases cited above took differing views of the applicable statute of limitations, which may largely account for their differing results. *Nat'l Football League Players Ass'n,* for example, held that the time limit, whether under the FAA or under Section 301 (*via* incorporated New York state law), would be one year. It held that the danger of an irremediable violation after one year had passed raised a sufficient case or controversy and permitted the court to entertain a timely motion to confirm. *Chicago Regional Counsel,* on the other hand, found that Section 301 permitted an application to confirm an arbitration award at any time within five years. *Derwin* itself held that a six-year limitation period was sufficient to allay such concerns. Thus, these courts reasoned, there would be time enough for the union to bring a confirmation application in the event the employer violated the award. Both held that there was no necessity for an immediate decision on a motion to confirm, and therefore no sufficient case or controversy.

The applicable statute of limitations in this case brings it within the holdings of *Chicago* and *Derwin,* rather than *Nat'l Football League.* Application of the *Derwin* analysis here is complicated by the fact that the Section 301

---

[6] The arbitrator framed it thus:

> Did the Company, UPS, violate Article 46 of the Local 177/UPS Supplemental Agreement when package car drivers from New Windsor and Chester, respectively, were assigned to work in the Spring Valley facility? If so, what shall be the remedy?

(Award, DE 1 p.36).

12

statute of limitations may vary from state to state. Generally, "actions to vacate or confirm an arbitration award under section 301 should be governed by the relevant state statute of limitations." *Serv. Emp. Int'l Union, Local No. 36, AFL-CIO v. Office Ctr. Servs., Inc.*, 670 F.2d 404, 409 (3d Cir. 1982) (applying Pennsylvania state law statute of limitations to a Section 301 motion to confirm labor arbitration award); *see also International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05 (1966) ("the timeliness of a section 301 suit . . .is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations."). Therefore, I look to New Jersey law, where "the prevailing party [to an arbitration award] retains the common-law right to seek confirmation in a plenary proceeding within the six-year statute of limitations applicable to contracts." *Policeman's Benevolent Ass'n, Local 292 v. Borough of N. Haledon*, 730 A.2d 320, 326 (N.J. 1999).[7]

A six-year limitations period gives the Union here plenty of time to bring an action to confirm the award should a problem arise.[8] Like the court in *Chicago Reg'l Council of Carpenters*, which found the limitations period to be five years, I do not see a significant risk of the Union's losing the ability to confirm and enforce its rights under this award.

---

[7]     *Policeman's* uses the term "plenary proceeding" advisedly. An additional wrinkle is that New Jersey permits a *summary* proceeding to confirm an arbitration award within 3 months. *Id.* at 401, 730 A.2d at 325; *see also* N.J. Stat. Ann. § 2A:24-7 ("A party to the arbitration may, within 3 months after the award is delivered to him, unless the parties shall extend the time in writing, commence a summary action . . .") I do not believe that New Jersey's provision of an additional, streamlined option affects the analysis. What is critical is whether the party's opportunity to obtain judicial intervention is likely to be extinguished at a time when the employer still has the opportunity to violate the award.

[8]     The Union asserts, or perhaps fears, that the FAA's one-year statute of limitations to confirm an arbitration award applies and would bar a later application to confirm. (DE 13 p. 15) In support, it cites a sentence from *Robinson v. PNC Bank*, No. CV 13-07818 (SRC), 2017 WL 2399082, at *3 (D.N.J. June 2, 2017)). Robinson, however, was a case involving fraudulent lending practices; the alternative, state-law-derived limitations period of Section 301, which is limited to the labor law context, would not even potentially apply. In *Robinson*, moreover, there was also an actual, ongoing dispute about the arbitration award. *Id.* *1-2.

13

I add that there is a further backstop to the Union's position, even when its time to confirm an award has expired. Later employer shenanigans may be further restrained by a court's (or an arbitrator's) decision to give the prior arbitration award *res judicata* or precedential effect.

*Chicago Reg'l* suggested as much: "[E]ven if the statute of limitations runs, the Union would not be deprived of its substantive rights under the award. An arbitrator's award, whether or not confirmed, can always be pleaded as res judicata in a subsequent suit." 2012 WL 6189635 at *5 n.7 (citing *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir. 1997)). While local case law is less categorical, there is every indication that federal courts within the Third Circuit would follow that lead. *See, e.g., USG Cos. v. Advantage Sales & Mktg. LLC*, No. 1:17-CV-861, 2018 U.S. Dist. LEXIS 105527, at *11–12 (D. Del. June 25, 2018) ("The Third Circuit has not directly spoken on this issue. But arbitration awards, even when unconfirmed, are generally accorded preclusive effect if the same issues or claims are later raised in court proceedings. To hold otherwise would permit those dissatisfied with the results of arbitration to file suit alleging the same claims or defenses, rendering arbitration "substantially worthless.") (citations omitted); *Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly, Inc.*, 673 F. Supp. 2d 313, 320 (D.N.J. 2009) ("Judicial proceedings ordinarily accord preclusive effect to arbitrations that have already adjudicated the same claims or defenses, even when the award is unconfirmed. . . . Although the Third Circuit has not yet defined the parameters of according preclusive effect to an unconfirmed arbitration award, the Restatement (Second) on Judgments has summarized the judicial consensus that a valid and final award by arbitration has the same effects under the rules of res judicata . . . as a judgment of a court as long as . . . five "essential elements of adjudication" are satisfied.")(citations omitted).[9]

---

[9] *See also Int'l Union of Elec., Radio & Mach. Workers v. Byrd Plastics, Inc.*, 428 F.2d 23, 26 (3d Cir. 1970) ("A clause stating that a decision of an arbitrator is 'final and binding' is no doubt intended to establish a principle similar to that of res

14

In sum, I hold that it is not appropriate or mandatory for the Court to consider the petitioner's motion to confirm the arbitration award at this time, when no actual case or controversy divides the parties. The action is dismissed for lack of subject matter jurisdiction.

A word in closing. I have followed what appears to be the most applicable appellate precedent. Asked to design a system, I would not choose the patchwork of state-law-dependent, context-specific rulings that has emerged here. Arbitration award confirmations are generally simple and often uncontested. Brought promptly, they avoid uncertainty and clarify the rights of the parties. I am skeptical of the claims of efficiency in *Derwin*; a cautious union may simply bring the confirmation proceeding anyway, in order to ensure that it asserted its rights timely, requiring a jurisdictional case-or-controversy analysis in each case, even (perhaps especially) when nothing may currently be at stake. Still, such practical considerations must yield to what has been held to be a limitation on this court's jurisdiction.

### III.  Conclusion

For the reasons set forth above, the Union's motion (DE 2) to confirm the arbitration award is DENIED, and UPS's cross-motion to dismiss (DE 11) is GRANTED. An appropriate order follows.

Dated: August 22, 2019

*/s/ Kevin McNulty*
**Kevin McNulty**
**United States District Judge**

---

judicata, and to bar reconsideration of the disputes fully decided on the merits."); *Behrens v. Skelly*, 173 F.2d 715, 720 (3d Cir. 1949) (In "Pennsylvania an award of arbitrators itself may constitute the basis for a plea of res judicata."); *see also Witkowski v. Welch*, 173 F.3d 192, 200 (3d Cir. 1999) ("[A] valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." (quoting Restatement (Second) of Judgments § 84 (1982))); *In re Kaplan*, 143 F.3d 807, 815 (3d Cir. 1998) ("Generally applicable res judicata rules must sometimes be adapted to fit the arbitration context.").